# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **ROBERT & DONNA JOWERS,** | : | **Case No. 1:08-CV-0036** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BOC GROUP, INC.,** | : | |
| **ESAB GROUP, INC.,** | : | **Judge Kathleen M. O'Malley** |
| **and** | : | |
| **LINCOLN ELECTRIC CO.,** | : | |
| | : | **MEMORANDUM AND ORDER** |
| | : | |
| **Defendants** | : | |

The Court presided over the trial of this matter during the month of February, 2008. Before trial,

the defendants filed a number of motions for summary judgment, and the Court issued oral rulings on those

motions.[1] The Court also promised to issue a written opinion setting out its reasoning more fully. This

is the promised opinion.[2]

*   *   *   *   *

This case has been consolidated with the Multidistrict Litigation known as *In re: Welding Fume*

---

[1] *See* Jowers pretrial tr. at 201-19 (Jan. 23, 2008); Jowers trial tr. at 462-66 (Feb. 8, 2008).

[2] For ease of writing, even though the Court has already entered judgments on all of Jowers' claims in this case, the Court refers to the parties' arguments and its own rulings in the present tense. Further, the Court's makes clear here that the summary judgment rulings are, and were, premised on the factual record submitted at the time the motions were briefed, and not on the fuller evidentiary record produced during trial.

*Prods. Liab. Litig.*, case no. 03-CV-17000, MDL no. 1535. Previously, the undersigned has issued a large number of rulings while presiding over: (1) the centralized proceedings; (2) three trials of other, individual welding fume cases; and (3) four other, individual cases that were set for trial but ultimately were not tried.[3] During the course of those rulings, the Court has set out in detail the general background of this MDL, the undisputed facts applicable to this case, and relevant case law. The Court expressly incorporates those rulings by reference, and so does not repeat itself here.[4]

As for this case, plaintiff Robert Jowers brings this action against three defendants: Lincoln Electric Company, BOC Group, Inc., and ESAB Group, Inc.[5] The three defendants are all manufacturers of welding rods that Jowers asserts he used during his career as a welder in Mississippi. Jowers alleges the fumes given off by these welding rods caused him to suffer neurological injury. In his third amended

---

[3] The first trial was in *Solis v. Lincoln Elec. Co.*, case no. 04-CV-17363, which involved claims made under Texas law. The second trial included two consolidated cases, *Goforth v. Lincoln Elec. Co.*, case no. 06-CV-17217, and *Quinn v. Lincoln Elec. Co.*, case no. 06-CV-17218, which involved claims made under South Carolina law. The third trial was *Tamraz v. Lincoln Elec. Co.*, case no. 04-CV-18948, which involved claims made under California law. The four other cases that were set for trial but were not tried were: *Ruth v. A.O. Smith Corp.*, case no. 04-CV-18912, which settled on the eve of trial; *Landry v. Nichols Wire*, case no. 03-CV-17016, which was voluntarily dismissed early in discovery; and *Morgan v. Lincoln Elec. Co.*, case no. 04-CV-17251, and *Peabody v. Lincoln Elec. Co.*, case no. 05-CV-17678, both of which were voluntarily dismissed shortly before trial.

[4] In addition to incorporating by reference all rulings contained in the Orders and hearings cited in the remainder of this opinion, the Court also incorporates by reference the following Orders: *In re Welding Fume Prods. Liab. Litig.*, 2007 WL 3226951 (N.D. Ohio Oct. 30, 2007) (granting summary judgment to defendant Caterpillar in all MDL cases); *In re Welding Fume Prods. Liab. Litig.*, 2007 WL 1087605 (N.D. Ohio April 9, 2007) (granting summary judgment to defendant Metropolitan Life Insurance Company in all MDL cases); and *Ruth v. A.O. Smith Corp.*, 2005 WL 2978694 (N.D. Ohio Oct. 11, 2005) (granting summary judgment on a conspiracy claim). Should any party later wish to appeal this Order, the Court makes clear here that the other rulings so incorporated must be included as an addendum to this Order and made a part of the appellate record.

[5] Robert is joined as a plaintiff by his wife, Donna Jowers, who brings a claim for loss of consortium. For simplicity, the Court refers in this opinion to Robert as "Jowers," as though he is the sole plaintiff. The third amended complaint also listed a number of other defendants, but they have been dismissed from this case – either by the Court or voluntarily by Jowers.

complaint, Jowers brings claims for: (1) aiding and abetting, acting in concert, and joint and concurrent tortfeasors in the tortious failure to warn; (2) aiding and abetting, acting in concert, and joint and concurrent tortfeasors in the failure to investigate and test; (3) conscious/negligent misrepresentation involving risk of physical harm; (4) negligent performance of an undertaking; (5) negligence; (6) negligent sale of a product; (7) strict liability – sale of an unreasonably dangerous product; (8) strict liability – failure to warn; and (9) punitive damages.  The parties agree that Jowers' claims all arise under Mississippi law.[6]

For the reasons stated on the record and explained further below, the Court rules on the defendants' summary judgment motions as follows:

- Defendants' motion for summary judgment on Jowers' negligence claims (docket no. 187) is **GRANTED**.

- Defendants' motion for summary judgment on Jowers' misrepresentation claims (docket no. 188) is **GRANTED in part and DENIED in part.**

- Defendants' motion for judgment on Jowers' claim for punitive damages (docket no. 192) is **DENIED**.

- Jowers' motion for summary judgment on defendants' 3rd, 12th, & 13th defenses (docket no. 184) is **DENIED** as to the 3rd and 13th defenses, and **GRANTED** as to the 12th defense.

The Court discusses each of these motions below.

## I.     Motion for Summary Judgment on Jowers' Negligence Claims.

As noted above, Jowers brings two claims under the theory of common law negligence (claims 5 and 6), and also two claims under the theory of strict product liability (claims 7 and 8), pursuant to the

---

[6] Subsequent to the filing of his third amended complaint, Jowers determined he would not pursue claims 1, 2, and 4 at trial.  Accordingly, the Court earlier granted as unopposed motions for summary judgment on those claims.

Mississippi Products Liability Act ("MPLA"). Defendants assert they are entitled to judgment as a matter of law on Jowers' negligence claims because they are "subsumed under" the MPLA and "merge with" the statutory claims. Essentially, defendants argue that the MPLA abrogated common law product-based claims, so that plaintiffs seeking recovery for harm caused by a product now have only statutory claims.

The case law addressing defendants' argument has been mixed. For example, in *Palmer v. Volkswagen of Am., Inc.*, 905 So. 2d 564 (Miss. Ct. App. 2003), the plaintiff "alleged various theories of product liability" in connection with a child fatality caused by an automobile airbag. *Id.* at 571. The theories included: (1) common law claims for "negligent design and negligent failure to warn;" and also (2) statutory claims for "defective design and failure to warn under the MPLA." *Id.* at 599. "At the close of evidence the trial court granted [defendant's] motion for a directed verdict" on the common law claims, concluding they were "redundant because the court was instructing the jury on the [plaintiffs' statutory] claims . . . under the MPLA." *Id.* On appeal, the appellate court affirmed: "a claim of inadequate warnings under the MPLA requires the jury to perform negligence analysis in assessing liability. Where, as here, the jury is instructed pursuant to the MPLA, the court need not present the jury with a separate

4

negligence instruction on inadequate warnings." *Id.* at 600.[7]

Other courts, in comparison, have directly rejected the conclusion that the MPLA abrogated common law claims. For example, in *Childs v. General Motors Corp.*, 73 F.Supp.2d 669 (N.D. Miss. 1999), the plaintiff brought product-based claims under both the MPLA and common law. The defendant moved for summary judgment on the common law claims, asserting "the plaintiff does not have a cause of action for negligence because the [MPLA] does not recognize negligence claims." *Id.* at 671. The court rejected this contention, explaining: "If the legislature intended to restrict any available claims, especially given the fact that Mississippi has a 'long standing tradition of pleading alternative theories in one action,' then the legislature would have clearly done so." *Id.* at 672 (quoting *Taylor v. General Motors Corp.*, 1996 WL 671648 at *2 (N.D. Miss. Aug. 6, 1996)). Agreeing with *Taylor*, the *Childs* court noted that, "[s]ince the [MPLA] is silent on alternative causes of actions, but expressly discusses those areas that effect a change in the common law, it is reasonable to presume the legislature did not intend to preclude

---

[7] Although the *Palmer* plaintiffs then appealed certain other points to the Mississippi Supreme Court, they did not appeal the affirmance of the trial court's grant of the motion for directed verdict on the common law claims. *Palmer v. Volkswagen of America, Inc.*, 904 So. 2d 1077, 1081 n.3 (Miss. 2005) (addressing only evidentiary rulings, and affirming in part and reversing in part).

There are two other state court appellate cases that follow the reasoning used in *Palmer*. *See Hunter v. General Motors Corp.*, 729 So. 2d 1264, 1277-78 (Miss. 1999) (affirming the trial court's decision to instruct the jury on the plaintiff's strict products liability claims but not his negligence claims: "in a product liability action against a manufacturer, based upon defective design, the jury need only be instructed on a single unified theory of negligent design") (quoting *Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176, 187 (Mich. 1984)); *Nunnally v. R.J. Reynolds Tobacco Co.*, 869 So. 2d 373, 380-82 (Miss. 2004) (affirming the "trial court['s] deni[al of] the proffered negligence instructions and submi[ssion of] the case to the jury solely on the theory of strict liability").

Of course, even though it may not be error for a court to fail to instruct a jury regarding a possibly "redundant" claim, "neither *Hunter* nor *Palmer* condemns negligence instructions being given in conjunction with instructions based on the provisions of the MPLA. The respective appellate courts in each instance merely declined to hold the trial judge in error for not doing so within the context of those plaintiffs' claims and evidence." *Smith v. Lincoln Elec. Co.*, unreported, case no. 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-CIV (Miss. Cir. Ct. Mar. 21, 2007).

that which was so prevalent in practice." *Id.* Accordingly, the *Childs* court concluded, "the MPLA established the procedures to be followed for a strict liability claim and did not abolish claims brought under negligence and breach of implied warranty." *Id.*[8]

In 2002, the Mississippi Supreme Court gave some support to Jowers' position by citing *Childs* with approval. In *Bennett v. Madakasira*, 821 So.2d 794 (Miss. 2002), the court stated: "Generally speaking, 'a new statute will not be considered reversing long-established principles of law and equity unless the legislative intention to do so clearly appears.'" *Id.* at 808 (quoting *Thorp Comm. Corp. v. Miss. Road Supply Co.*, 348 So.2d 1016, 1018 (Miss. 1977)). Thus, the *Bennett* court ruled, "[even] though the MPLA creates a cause of action in tort for breach of express warranty, it does not preclude the breach of implied warranty claims under the Mississippi Uniform Commercial Code in products liability actions." *Id.* By analogy, Jowers argues, even though the MPLA creates a statutory cause of action for strict liability failure to warn, his common law claim for negligent failure to warn survives. As defendants note, however, read strictly, *Bennett* held only that "the MPLA does not abrogate a statutory cause of action for breach of implied warranty as grounds for recovery;" *Bennett* said nothing about common law negligence

---

[8] *See also Hodges v. Wyeth-Ayerst Labs.*, 2000 WL 33968262 at *3 (S.D. Miss. May 18, 2000) (citing *Childs* and *Taylor* and agreeing that "the MPLA does not bar plaintiffs from pleading negligence and other common law causes of action in the alternative to any strict liability claims they may allege under the MPLA"); *Rials v. Philip Morris, USA*, 2007 WL 586796 at *5 (S.D. Miss. Feb. 21, 2007) (suggesting, without analysis, that a negligence claim might survive the MPLA, but finding it would fail for other reasons). It is notable that the four opinions that reject the conclusion that the MPLA abrogated negligence claims (*Childs*, *Taylor*, *Hodges*, and *Rials*) are: (1) all issued by federal courts taking their best *Erie* guess as to what Mississippi state law requires; and (2) for the most part, older than the state court cases suggesting otherwise (*Palmer*, *Hunter*, and *Nunnally*).

claims. *Id.* (emphasis added).[9]

More recently, the Mississippi Supreme Court examined the interplay of the MPLA and state common law in *R.J. Reynolds Tobacco Co v. King*, 921 So. 2d 268 (Miss. 2005). In *King*, the plaintiff brought ten different claims against the manufacturer of the cigarettes she smoked, including claims under common law theories of negligence, fraud, conspiracy, and breach of warranty. The trial court granted a motion to dismiss some, but not all, of plaintiffs' claims, based on the MPLA's statutory "inherent characteristics defense." On appeal, the defendant cigarette manufacturer argued "that *all* of [the plaintiff's] claims . . . are within the scope of the MPLA, and thus, [*all*] subject to the inherent characteristics defense" contained in the MPLA; accordingly, *all* of the plaintiffs claims must be dismissed. *Id.* at 271. The plaintiff counter-argued that "the inherent characteristics defense does not apply, and the MPLA does not bar suits based on theories other than products liability." *Id.* The Mississippi Supreme Court agreed with the plaintiff: "the inherent characteristic defense applies only to a products liability action. One would not expect to see this defense pled in any other type of liability action." *Id.* at 272.

Jowers argues that the clear implication of this holding is that the MPLA does not abrogate other product-based claims premised on different theories of liability: "The defendants are correct [in reading *King* to hold] that *products liability claims* cannot be pursued outside the statute, but this says nothing about *other claims* for which a manufacturer may incur liability. A 'products liability claim' is a particular cause of action; it does not necessarily refer to all sources of liability that a manufacturer may face."

---

[9] Further, the *Bennett* court echoed *Palmer* when it stated: "Although a plaintiff in a prescription drug liability case may alternatively rely on strict liability and negligence principles, 'these principles merge into one inquiry; the adequacy of the defendant's warnings.'" *Bennett*, 821 So.2d at 804 (quoting *Swayze v. McNeil Labs., Inc.*, 807 F.2d 464, 467 (5th Cir. 1987)).

Response brief at 9 (emphasis in original). Thus, according, to Jowers, the MPLA abrogates common law claims for strict product liability,[10] but not common law claims for negligence.

The problem with Jowers' argument, however, is that the *King* court explicitly characterized negligence claims directed at product defects as a species of "product liability claim." Quoting Dean Prosser, the court explained: "Products liability is the name currently given to the area of the law involving the liability of those who supply goods or products for the use of others . . . for [losses] of various kinds resulting from so-called defects in those products. It may, infrequently, rest upon intent; but except in rare circumstances, it is a matter of negligence, or of strict liability." *King*, 921 So.2d at 271 (citations and internal quotation marks omitted); *see also id.* at 272 (noting that the trial court, which had dismissed the claims for strict liability, negligence, gross negligence, and breach of express and implied warranties, had "dismissed the products liability claims"). Thus, a claim for negligent failure to warn about a product's alleged hazards is still a "product liability claim," even though it is premised on a theory of negligence and not strict liability.

It is true that in neither *Bennett* nor *King* has the Mississippi Supreme Court stated explicitly and precisely whether the MPLA still permits (or does not abrogate) common law negligence claims in product liability cases. The undersigned believes, however, that the greater weight of the somewhat-mixed authority holds that negligence-based claims *of product defect* are abrogated by the MPLA.

Perhaps most important, however, is that *regardless* of whether Jowers' negligence claims are wholly *abrogated* by the MPLA, it is clear that this Court's decision to instruct the jury only on Jowers' MPLA claims is not error. *Palmer* explains that, under Mississippi law, "a claim of inadequate warnings

---

[10] *See Huff v. Shopsmith, Inc.*, 786 So.2d 383, 387 (Miss. 2001) ("[w]ith the adoption of [the MPLA at] §11-1-63, common law strict liability, as laid out in *State Stove Mfg. Co. v. Hodges*, 189 So.2d 113 (Miss. 1966), is no longer the authority on the necessary elements of a products liability action").

under the MPLA requires the jury to perform negligence analysis in assessing liability. * * * [When] the jury is instructed pursuant to the MPLA, the court need not present the jury with a separate negligence instruction on inadequate warnings." *Palmer*, 905 So.2d at 600. The Mississippi Supreme Court has reaffirmed this logic twice, in *Nunnally* and *Bennett*. Ultimately, it makes little difference whether a jury receives no instruction on Jowers' negligence claims because the Court concludes those claims are abrogated by the MPLA, or because the Court concludes they are redundant of Jowers' MPLA claims. The analysis the jurors must undertake once they begin deliberation is the same, and the evidence upon which they must base their conclusion will also be the same.

Accordingly, the Court will grant defendants' motion for summary judgment on Jowers' common law negligence claims (claims 5 and 6).

## II.     Motion for Summary Judgment on Jowers' Misrepresentation Claims.

### A.     Facts.

The following material facts, which are relevant to the defendants' motion for summary judgment on Jowers' claims for negligent and conscious misrepresentation, are not in dispute.[11] For many years, the welding rod manufacturing defendants have shipped their welding consumables with warning labels and Material Safety Data Sheets ("MSDSs"), but Jowers' review of these written materials was extremely limited. Jowers testified that he never read a MSDS. He recalled reading warning labels only a few times

---

[11] Although the Court earlier orally granted in part and denied in part the defendants' motion for summary judgment on Jowers' misrepresentation claims, *see* Jowers trial tr. at 462-66 (Feb. 8, 2008), the Court later granted in full defendants' Rule 50 motion for judgment as a matter of law on those same claims, after the close of plaintiffs' case, *see id.* at 1448-49 (Feb. 15, 2008). As noted above, the Court's summary judgment rulings are, and were, premised on the factual record submitted at the time the motions were briefed, and not on the fuller evidentiary record produced during trial.

in his career. Further, Jowers testified he never read any of the books, magazine articles, medical or scientific studies, or other publications regarding welding fumes that were sponsored or distributed by the manufacturing defendants or the trade organizations to which they belonged (e.g., the American Welding Society). On the other hand, Jowers' employer, Ingalls Shipyard, did receive publications sponsored or distributed by some or all of the defendants that addressed the safety and hazards of welding fumes and the use of welding products. These publications were available to Ingalls supervisory employees, including industrial hygienists and safety supervisors and managers in charge of training welders, and the defendants intended these supervisory employees to rely on the publications for safety information related to welding.

### B. Legal Standards.

The elements of a claim for negligent misrepresentation under Mississippi law are:

> (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the defendant failed to exercise that degree of diligence and expertise the public is entitled to expect of it; (4) that the plaintiff reasonably relied on the defendant's representations; and (5) that the plaintiff suffered damages as a direct and proximate result of his reasonable reliance.

*Skrmetta v. Bayview Yacht Club, Inc.*, 606 So.2d 1120, 1124 (Miss. 2002). The elements of a claim for conscious misrepresentation – also known as fraud[12] – under Mississippi law are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge; (5) his intent that it should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Levens v. Campbell*, 733 So.2d 753, 761-62 (Miss. 1999). The plaintiff must prove the elements of a claim

---

[12] Both Jowers and defendants agree that "conscious misrepresentation" is another name for fraud, and the elements of a claim for fraud are the elements of a claim for conscious misrepresentation.

for negligent misrepresentation by a preponderance of the evidence, but must prove the elements of a claim for conscious misrepresentation by clear and convincing evidence.

Among others, the elements that the two claims have in common are that the plaintiff must prove he *relied upon* a material representation.[13]   As defendants note, it is undisputed that the only representations or omissions that Jowers could have relied upon *directly* were the warning labels that accompanied the welding consumables he used.  Jowers never read any MSDS nor any public literature regarding welding fumes, so there can be no argument that he relied directly upon representations or omissions they contained; and, therefore, there can be no finding of liability premised on those representations or omissions.  *See Stonecipher v. Kornhaus*, 623 So.2d 955, 964 (Miss. 1993) (summary judgment on a claim of negligent misrepresentation is appropriate where "neither party has relied upon any statement or representation made by the other party"); *Little v. Miller*, 909 So.2d 1256, 1260 (Miss. Ct. App. 2005) (affirming summary judgment on claims of negligent and fraudulent misrepresentation where the evidence "is insufficient to establish the requisite reliance as to each of these claims"); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1155 (9th Cir. 2005) (summary judgment on misrepresentation claim is required if the plaintiff has not "actually read or heard the alleged misrepresentation").  In contrast, Jowers asserts there were representations and omissions made by the defendants to his employer, Ingalls Shipyard, regarding the hazards (or lack thereof) associated with welding, and that he relied on these representations and omissions *indirectly* because Ingalls conveyed this information to him, as the defendants intended.

---

[13]  See elements 1, 2, and 4 of a claim for negligent misrepresentation, and elements 1, 3, and 7 of a claim for conscious misrepresentation.

**C.     Conscious Misrepresentation (Fraud).**

In *Ruth v. A.O. Smith Corp.*, 2005 WL 2978694 (N.D. Ohio Oct. 11, 2005), a case with material facts essentially the same as in this case, the Court examined the viability of a claim for fraud under Mississippi law. The Court noted that: (1) the basis for the fraud claims was not that the defendants' warning labels *affirmatively misrepresented* the hazards of welding fumes, but that the warnings *concealed or omitted mention* of those hazards, *id.* at *3; (2) "Mississippi courts . . . have consistently held that a claim of fraud may not be based upon an omission or silence, unless there exists a special relationship between the parties," *id.*; and (3) no such special relationship existed between the plaintiff and the defendants, *id.* at *4. The Court concluded that, given the lack of any "special relationship" between the defendants and plaintiff Ruth, he could not prevail on his fraud claim, so summary judgment was appropriate. Importantly, Ruth's fraud claim was premised only on a theory of direct reliance on the defendants' statements and omissions, not on indirect reliance through his employer.

Jowers tries to avoid the "special relationship" requirement discussed in *Ruth* with three arguments. First, Jowers argues that the "special relationship" need not be a fiduciary relationship: "liability for non-disclosure can arise in situations where there is no fiduciary relationship at all, but rather in the context of an adversarial, arms-length business transaction." Response brief at 14. Jowers cites the *Restatement 2d of Torts* and *Corpus Juris Secundum* to support this assertion. As the Court discussed in *Ruth*, however, even if the special relationship need not be fiduciary in character, it must still be a "similar relation of trust and confidence." *Mooneyham v. Progressive Gulf Ins. Co.*, 910 So.2d 1223, 1227 (Miss. Ct. App. 2005). *See Ruth*, 2005 WL 2978694 at *4 (noting that Mississippi courts have rejected assertions that a special relationship existed in cases "where the parties had direct, substantial, interpersonal contact" involving more trust and confidence than in a simple "product-user / product-manufacturer" relationship);

12

*see Taylor v. Southern Farm Bureau Cas. Co.*, 954 So.2d 1045, 1049-50 (Miss. Ct. App. 2007) ("The purchase of insurance is deemed to be an arms length transaction, and accordingly no fiduciary duty arises."). Mississippi courts make clear that the "special relationship" requirement exists, and the facts in this case make clear that Jowers does not have the necessary relationship with the defendants. Jowers' argument that the quality of his relationship with the defendants allows him to bring a fraud claim premised on omissions is not supported by the facts or law.

Second, Jowers asserts that his fraud claim is not based simply upon "an omission or silence," thereby requiring a special relationship. Rather, Jowers argues, his fraud claim is based on assertion of "half-truths" – that is, the defendants allegedly made "partial representations but also suppresse[d] some material facts" – and that, in such circumstances, no "special relationship" is required at all. Jowers notes this Court so held in *Tamraz v. Lincoln Elec. Co.*, 2007 WL 3399721 at *8-10 (N.D. Ohio Nov. 13, 2007), where California law applied, and he tries to show that Mississippi law and California law are not different in this respect.

In California however, there exists state court case law stating explicitly that: (1) fraud claims may be brought based on half-truths; (2) the absence of a fiduciary relationship, *or even direct transactions*, between the parties does not preclude a fraud claim based on half-truths; and (3) fraud claims in the precise factual circumstances of this case are *not* amenable to summary judgment. *Id.* Although Jowers does a valiant job of identifying principles of Mississippi law generally analogous to those in California, he does not identify any specific, definitive Mississippi case law showing that there is a "half-truth" exception to the rule that a claim of fraud may not be based upon an omission or silence absent a special relationship. To the contrary, there is ample case law holding that, "in Mississippi, the mere silence or nondisclosure of material facts by a manufacturer does not support a finding of fraudulent concealment by the ultimate

13

consumer." *Ruth*, 2005 WL 2978694 at *4 (quoting *Harris v. Brush Engineered Materials, Inc.,* 2005 WL 3806048 at *2 (S.D. Miss. Feb. 18, 2005)); *see Taylor v. Southern Farm Bureau Cas. Co.*, 954 So.2d 1045, 1049 (Miss. Ct. App. 2007) ("In Mississippi, a claim of fraud by omission arises *only* where the defendant had a duty to disclose material facts purportedly omitted. This duty generally arises *only* where there is a fiduciary relationship between the parties.") (citations omitted; emphasis added). Unless and until a Mississippi court states that Mississippi law allows for an omissions-based fraud claim in circumstances that, at the least, are very similar to those in this case (as did a California court), this Court must conclude that conscious misrepresentation claims based on omissions or half-truths will fail as a matter of law.

Jowers' third argument is that, even though he cannot point to any affirmative misrepresentations made by the defendants upon which he relied *directly*, the defendants made affirmative misrepresentations to his employer, Ingalls Shipyard, with the expectation that Ingalls would essentially repeat those misrepresentations to him; and, further, that Ingalls supervisors and managers did, in fact, pass on those misrepresentations and Jowers did, in fact, reasonably rely upon them. As an example, Jowers notes that defendant Lincoln provided to Ingalls a 1972 welding handbook stating that welding fumes are "innocuous." Jowers asserts the evidence will show that: this statement is false; Lincoln knew it was false when it made it; Lincoln expected Ingalls to pass this false information on to its welder-employees; Ingalls actually did pass this information on to Jowers; and Jowers reasonably relied upon it, to his detriment. Thus, Jowers argues summary judgment on his fraud claim is inappropriate because he can establish *indirect* reliance upon affirmative misrepresentations made by the defendants.

As noted, the Court was not presented with this argument in *Ruth*.[14] Having examined Mississippi law, the Court concludes that Jowers must be allowed to pursue a theory of fraud premised upon *indirect* reliance on affirmative misrepresentations made by a defendant to Ingalls.

The *Restatement (Second) of Torts* (1965) addresses indirect reliance in two consecutive, related sections, and each section may be applied to the facts of this case. The Mississippi Supreme Court has adopted §311 of the *Restatement (Second) of Torts* (1965), which states: "One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results . . . to such third persons as the actor should expect to be in peril by the taken action." *Clark v. St. Dominic-Jackson Memorial Hosp.*, 660 So.2d 970, 974 (1995).[15] Certainly, Mississippi courts would also find liability if the actor *purposefully* "gives false information to another" in the same circumstances, as Jowers alleges. Jowers asserts the defendants purposefully gave false information regarding welding fume safety to Ingalls, Ingalls reasonably relied upon this false information when instructing Jowers on how to weld safely, this reliance had the effect of placing Jowers in peril – ultimately causing him to suffer physical harm – and defendants could expect that giving this false information to Ingalls would imperil Jowers and other Ingalls welders. Based on the evidence so far presented, all of these assertions have more than a scintilla of evidentiary

---

[14] In fact, in *Ruth*, the Court stated that "historical statements made to industry participants, in trade journals, that welding is safe," which Ruth did "not assert he . . . ever read or heard . . . [or] *relied* on", cannot serve as the premise for a claim of misrepresentation. *Ruth*, 2005 WL 2978694 at *5 (emphasis in original). Here, Jowers alleges he did rely on statements made by defendants, although indirectly.

[15] See also *Restatement* §310, which states: "An actor who makes a misrepresentation is subject to liability to another for physical harm which results from an act done by the other or a third person in reliance upon the truth of the representation, if the actor (a) intends his statement to induce or should realize that it is likely to induce action by the other, or a third person, which involves an unreasonable risk or physical harm to the other, and (b) knows (i) that the statement is false, or (ii) that he has not the knowledge which he professes."

support.

In addition, *Restatement* §310 states: "An actor who makes a misrepresentation is subject to liability to another for physical harm which results from an act done by the other or a third person in reliance upon the truth of the representation, if the actor (a) intends his statement to induce or should realize that it is likely to induce action by the other, or a third person, which involves an unreasonable risk or physical harm to the other, and (b) knows (i) that the statement is false, or (ii) that he has not the knowledge which he professes." In this case, Jowers asserts the defendants purposefully gave false information regarding welding fume safety to Ingalls (knowing the information would be passed on to Ingalls welders), the defendants knew or should have known this information would induce Jowers to take insufficient protective measures when welding, Jowers and other Ingalls welders actually relied on the false information provided by the defendants, and Jowers' reliance and actions involved an unreasonable risk of physical harm. Again, all of these assertions have a colorable evidentiary basis.

Given the current state of the evidentiary record, this Court cannot grant summary judgment to defendants on Jowers' claim of fraud as a matter of law, to the extent that his claim is premised on indirect reliance on *affirmative* misrepresentations.

The Court holds, however, that Jowers may prevail on this claim only if he shows at trial that: (a) a defendant made an affirmative misrepresentation to Jowers' employer; (b) the defendant reasonably expected that the employer would convey substantially the same affirmative misrepresentation to Jowers; (c) the employer actually did so; and (d) Jowers actually and reasonably relied upon the affirmative

misrepresentation.[16] Also, the type of showing to support this alleged indirect reliance is exacting,[17] and a fraud claim will only lie against the individual defendant who made the relied-upon affirmative misrepresentation. Finally, given that Jowers admits there were no affirmative misrepresentations contained in the defendants' warnings,[18] the affirmative misrepresentations upon which he allegedly relied *indirectly* must be appear outside of the defendants' warning labels, themselves.

In sum, to the extent that Jowers' fraud claim is premised on omissions or half-truths, summary judgment is granted; however, to the extent Jowers' fraud claim is premised on indirect reliance upon affirmative misrepresentations, summary judgment is denied.

### D. Negligent Misrepresentation.

As noted above, the *King* opinion suggests that a claim for negligent failure to warn is a specie of "product liability claim," which is, at the least, redundant of a strict liability failure to warn claim under the MPLA, and possibly abrogated by the MPLA. The *King* court, however, suggested that a claim for negligent misrepresentation, in contrast, *may* not be a "product liability claim." Specifically, even though

---

[16] The plaintiff in *Ruth* argued "that the effect of [the defendants'] historical statements [made in trade journals] was to create a lasting false impression, causing industry participants, including his employer, to be less careful than necessary to assure his safety." *Ruth*, 2005 WL 2978694 at *5. The Court held that "this effect is too attenuated to suggest any direct reliance on an affirmative misrepresentation made by a defendant." *Id.* In this case, Jowers asserts a much more linear cause and effect, and these requirements ensure that he will prevail on this claim at trial only if he can show (as required by Mississippi law) *actual reliance* upon a statement made by a defendant that was passed on to him by his employer.

[17] This is especially true given that a claim for fraud must be proved by clear and convincing evidence. Conceivably, Jowers could establish indirect reliance in the context of a claim for negligent misrepresentation (which carries only a preponderance burden) but not in the context of fraud.

[18] For example, there is no affirmative statement in any of defendants' warnings – such as "this product may be used safely without a respirator," or "fumes from this product are known to cause only temporary respiratory problems" – upon which Jowers alleges he relied.

the *King* court stated that "the trial court dismissed the products liability claims," the *King* court also noted

that the trial court had *denied* the motion for judgment on plaintiff's claim for negligent misrepresentation,

which remained pending. *King*, 921 So.2d at 272 & 271 n.1. It is, perhaps, for this reason that defendants

do not argue that Jowers' negligent misrepresentation claim is abrogated by the MPLA.[19] Rather,

defendants argue they are entitled to summary judgment on Jowers' negligent misrepresentation claim

because Jowers cannot show he reasonably relied on any misrepresentation. As with Jowers' fraud claim,

the Court agrees only in part. To the extent Jowers' claim for negligent misrepresentation is premised on

omissions, summary judgment is granted; however, to the extent his claim for negligent misrepresentation

is premised on half-truths or affirmative misrepresentations, whether relied upon directly or indirectly,

summary judgment is denied.

First, Jowers asserts he relied upon defendants to tell him everything he reasonably needed to know

to weld safely, but the defendants did not fully disclose certain hazards to him (or to his employers) – a

failure of omission. To the extent Jowers claims he "relied upon" anything communicated by the

defendants to him *directly*, his reliance is only upon the warnings, themselves, and what they did and did

not say. In other words, this aspect of Jowers' claim for negligent affirmative misrepresentation is entirely

contiguous with his claim for negligent failure to warn. And, as discussed above, the common law claim

for negligent failure to warn is duplicative of, if not abrogated by, the MPLA claim for strict liability

failure to warn.

In *King*, the plaintiff pointed to affirmative misrepresentations made by the tobacco-industry

---

[19] *But see Smith v. Lincoln Elec. Co.*, slip. op at 5, case no. 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-CIV (Miss. Cir. Ct. Mar. 21, 2007) (the same defendants argued, in a welding fume case, that "the MPLA replaces all common law claims based on allegedly inadequate product warnings, including claims for negligent misrepresentation, and that such claims must therefore proceed under the MPLA, regardless of how they are framed."). The *Smith* court rejected this argument. (*Smith* is unreported, but may be found at docket no. 231, exh. A.)

defendant that were *in addition to and separate from* the cigarette warnings, and upon which she relied *directly*. *King*, 921 So.2d at 270 (referring to "deceptive advertising").; *cf. Cipollone v. Liggett Groups, Inc.* 683 F. Supp. 1487 (D. N.J. 1988) (discussing various sorts of statements, separate from warnings, made by tobacco companies that could qualify as affirmative misrepresentations). This sort of alleged negligent misrepresentation goes beyond any failure to warn, and so is not simply a "product liability claim," and, thus, is not automatically abrogated by the MPLA. It is for this reason that Judge Bobby DeLaughter denied defendants' motion for summary judgment on the negligent misrepresentation claim in *Smith v. Lincoln Elec. Co.*[20] In this case, however, there is simply no communication from the defendants upon which Jowers alleges he relied directly, other than the defendants' warnings, themselves.

Jowers also asserts the defendants engaged in negligent misrepresentation by making affirmative misrepresentations and half-truths to Ingalls, which reasonably relied upon the substance of those communications and repeated them to him, and upon which he then reasonably relied, himself. In other words, Jowers repeats both of his "indirect reliance" arguments. For the same reasons as were explained above in the context of Jowers' fraud claim, the Court concludes that Jowers must be allowed to pursue a theory of negligent misrepresentation premised upon *indirect* reliance on affirmative misrepresentations made by a defendant to Ingalls. As before, Jowers may prevail on this claim only if he shows that: (a) a defendant made an affirmative misrepresentation to Jowers' employer; (b) the defendant reasonably

---

[20] *Smith*, unreported, case no. 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-CIV (Miss. Cir. Ct. Mar. 21, 2007). As Judge DeLaughter explained: "What is before the Court is a motion for summary judgment predicated on the theory that the MPLA has supplanted claims for negligent misrepresentation. . . . [T]he theory is flawed." Slip op. at 8. As explained above, Judge DeLaughter's conclusion is supported by *King* (although he did not cite *King*). In his opinion, Judge DeLaughter did not reach the question of whether there were any affirmative statements relied upon by the plaintiff, besides the warnings, themselves, that would support a claim for negligent misrepresentation, but he did note that he would grant a similar motion after trial if convinced that the negligent misrepresentation claim was a "duplicitous [sic] claim[] requiring the same elements and the same evidence" as the plaintiff's failure-to-warn and other claims. *Id.*

expected that the employer would convey substantially the same affirmative misrepresentation to Jowers; (c) the employer actually did so; and (d) Jowers actually and reasonably relied upon the affirmative misrepresentation.

In sum, to the extent that Jowers' negligent misrepresentation claim is premised on omissions, summary judgment is granted; however, to the extent Jowers' negligent misrepresentation claim is premised on half-truths or indirect reliance upon affirmative misrepresentations, summary judgment is denied.[21]

## III.     Motion for Judgment on Jowers' Claim for Punitive Damages.

In the other *Welding Fume* cases that were set for trial, the defendants also moved for summary judgment on plaintiffs' claims for punitive damages. The Court denied those motions, including in a case where Mississippi law applied. *See, e.g., Ruth v. A.O. Smith Corp.*, 2006 WL 530388 at *3 (N.D. Ohio Feb 27, 2006) (Mississippi law); *Solis*, docket no. 146 and hearing tr. at 179 (May 16, 2006) (Texas law); *Goforth*, docket no. 102 and hearing tr. at 121-23 (Oct. 25, 2006) (South Carolina law); *Tamraz*, docket no. 147 (California law). These denials occurred even though the different state-law standards for punitive

---

[21]  While Jowers may premise his negligent misrepresentation claim on half-truths, he may not premise his fraud claim on half-truths; this is because, to prevail on a fraud claim using half-truths, the parties must have a "special relationship," but there is no similar requirement under a negligent misrepresentation theory.

damages applicable in the cases varied somewhat.[22]

For the reasons stated in those prior rulings, the Court again concludes that the defendants' motion for summary judgment on Jowers' claim for punitive damages must be denied. As noted in those other cases, however, this denial "is without prejudice, meaning defendants may later move for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50, on [Jowers'] claim for punitive damages." *Ruth*, 2006 WL 530388 at *3.[23]


## IV. Jowers' Motion for Summary Judgment on Defendants' 3rd, 12th, & 13th Defenses.

In their answer to Jowers' third amended complaint, certain defendants assert a number of defenses. As to three of them, Jowers asserts he is entitled to judgment as a matter of law. In particular Jowers points to the defendants' 3rd, 12th, and 13th defenses, which are: (3) the learned intermediary / sophisticated user defense; (12) the joint tortfeasor defense; and (13) the defense of comparative

---

[22] In this case, the standards for punitive damages under the MPLA are set out at Miss. Code Ann. § 11-1-65. Section 11-1-65(1)(a) states: "Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Section 11-1-65(1)(e) states that, when assessing punitive damages, a jury shall consider: "the defendant's financial condition and net worth; the nature and reprehensibility of the defendant's wrongdoing, for example, the impact of the defendant's conduct on the plaintiff, or the relationship of the defendant to the plaintiff; the defendant's awareness of the amount of harm being caused and the defendant's motivation in causing such harm; the duration of the defendant's misconduct and whether the defendant attempted to conceal such misconduct; and any other circumstances shown by the evidence that bear on determining a proper amount of punitive damages." The Mississippi Supreme Court has affirmed an award of punitive damages in a case involving claims brought under the MPLA. *Cooper Tire and Rubber Co. v. Tuckier*, 826 So.2d 679 (Miss. 2002).

[23] The Defendants did, in fact, move for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50, on all of Jowers' claims – both at the close of Jowers' case and also at the close of defendants' case. *See* Jowers trial tr. at 1419-53 (Feb. 15, 2008); Jowers trial tr. at 3024-33 (Mar. 2, 2008). The Court denied all of the Rule 50 motions as to all claims, except that it granted the Rule 50 motion on Jowers' misrepresentation claims after the close of defendants' case.

negligence. The Court addresses each defense below.

## A.     The Learned Intermediary / Sophisticated User Defense.

Mississippi law recognizes the learned intermediary / sophisticated user defense in the context of non-pharmaceutical product liability actions. *Swan v. I.P., Inc.*, 613 So.2d 846, 856 (Miss. 1993). Defendants assert this defense in their answer, alleging that "the plaintiff and his employers are sophisticated users of welding electrodes who not only understand the potential fume hazard associated with welding, but the means to reduce it, i.e., ventilation and/or respiratory protection." Accordingly, defendants assert, "[i]f plaintiff or his employers knew of the potential fume hazard and the means to reduce it and did not do so, then they were negligent and/or assumed the risk of injury."

In his motion, Jowers asserts there is no valid factual basis to support the argument that Jowers' primary employer, Ingalls Shipyard, was a learned intermediary, or that Jowers, himself, was a sophisticated user. Jowers points to the testimony of James Ivy, an Ingalls employee responsible for welding "craft training," who testified he was unaware of the hazards of manganese in welding fumes. Jowers argues that, if the individual at Ingalls who was in charge of training welders was not aware of this hazard, Ingalls cannot be deemed a learned intermediary, as a matter of law and undisputed fact. As this Court recognized in a similar welding fume case, if "defendants had certain knowledge regarding the extent of welding fume hazards and how to avoid those hazards, but defendants did not fully disclose this information to Ingalls Shipyard[, then] Ingalls may not have been completely 'learned' regarding the known hazards of welding, and so could not adequately warn [its welder-employees]." *Ruth v. A.O. Smith Corp.*, 2006 WL 530388 at *2 (N.D. Ohio Feb. 27, 2006) (denying defendants' motion for summary judgment based on the learned intermediary defense, in a case involving Mississippi law and a welder who

worked at Ingalls shipyard).

In response, however, defendants: (1) note that Mr. Ivy was not responsible for *safety* training at Ingalls Shipyard; (2) point to testimony from other Ingalls Shipyard employees suggesting that Ingalls was a learned intermediary; and (3) point to evidence suggesting that Ingalls Shipyard received all necessary information to be fully "learned" regarding welding hazards. Based on the entirety of the evidence, the Court cannot conclude, as a matter of law, that no reasonable jury could find in favor of defendants on the learned intermediary / sophisticated user defense. Based on the record evidence so far adduced, just as a reasonable jury could conclude that Ingalls Shipyard was not a learned intermediary, *see Ruth*, 2006 WL 530388 at *2, a reasonable jury could also conclude it was. Similarly, a reasonable jury could conclude that Jowers' himself, was a sophisticated user. Because there remain material issues of fact in dispute, Jowers' motion for summary judgment on this defense must be denied.

**B.      The Joint Tortfeasor Defense.**

Under Mississippi law, "[i]n actions involving joint tort-feasors, the trier of fact shall determine the percentage of fault for each party alleged to be at fault without regard to whether the joint tort-feasor is immune from damages." Miss. Code. Ann. §85-5-7(5). Defendants assert that, to the extent Jowers' injuries were caused by the negligent conduct of Ingalls Shipyard for failing to provide a safe work environment, a jury should apportion fault accordingly. As the parties are aware, however, application of §85-5-7 is not straightforward when the plaintiff is covered by the federal worker's compensation statute known as the Longshore and Harbor Workers' Compensation Act (''LHWCA''), 33 U.S.C. §§901 *et seq.*

In *Ruth v. A.O. Smith Corp.*, 416 F. Supp. 2d 584 (N.D. Ohio 2006) ("*Ruth-LHWCA Opinion*"),

this Court examined the question of "whether it [would] permit a jury to allocate fault to Ingalls on a verdict form." *Id.* at 586. This examination was necessary because, despite the mandatory language of §85-5-7, "LHWCA provides explicitly that the trial court should *not* assess the fault of the employer, nor reduce a verdict against the [principal defendant] by the amount of the employer's fault" in certain circumstances. *Id.* at 588 (emphasis in original). After examining the interplay of LHWCA and §85-5-7 as interpreted by the Mississippi Supreme Court, this Court concluded it would not permit a jury to allocate fault to Ingalls, contrary to the defendants' wishes. Although the Mississippi Supreme Court had used somewhat confusing logic when examining the reach of LHWCA, this Court concluded that "the current state of Mississippi law holds that, when an employee covered by LHWCA sues a third party for damages, the trial court does not apportion fault to the employer." *Id.* at 592.

Jowers asserts that the *Ruth-LHWCA Opinion* applies equally to his case. Defendants acknowledge that the "state of Mississippi law," as set out in the state supreme court cases of *Accu–Fab*, and *Mack Trucks*, has not changed since the Court's *Ruth-LHWCA Opinion*.[24] Defendants argue, however, that the holding in that opinion does not apply to Jowers, because the facts are different: "plaintiff Ruth applied for and receives LHWCA benefits through Ingalls Shipyard," *id.* at 586, but plaintiff Jowers never made a claim for nor received LHWCA benefits, and is now time-barred from doing so. According to defendants, this factual difference takes Jowers' case outside the ambit of the *Ruth-LHWCA Opinion*, and a jury should be allowed to apportion fault to Ingalls Shipyard.

The Court finds this argument unavailing. The defendants do not dispute that Jowers was a longshoreman, or "land-based maritime worker," who was eligible to receive "compensation . . . in respect

---

[24] *Accu–Fab & Construction, Inc. v. Ladner*, 778 So.2d 766 (Miss. 2001); *Mack Trucks, Inc. v. Tackett*, 841 So.2d 1107 (Miss. 2003).

of disability or death" under LHWCA. *Stewart v. Dutra Constr. Co.*, 125 S.Ct. 1118, 1123 (2005); 33 U.S.C. §903. In other words, he was covered by LHWCA, and its provisions applied to him. That Jowers did not, and apparently now cannot, seek to take advantage of the compensatory benefits available under the statute does not mean he was not covered. And, as the Court has already concluded, "when [a Mississippi] employee *covered by LHWCA* sues a third party for damages, the trial court does not apportion fault to the employer." *Ruth-LHWCA Opinion*, 416 F.Supp.2d at 592 (emphasis added); *see Levene v. Pintail Enterprises, Inc.*, 943 F.2d 528, 532 (5th Cir. 1991) ("it is clear that so long as [plaintiff] Levene was a *covered worker under the LHWCA* . . . Pintail as employer enjoys full immunity from suit") (emphasis added); *Jenkins v. Bill Lawrence, Inc.*, 2000 WL 680254 at *1 (E.D. La. May 24, 2000) ("[i]f plaintiff is found to be *covered by [LHWCA]* exclusively, then [employer] BLI is entitled to absolute immunity from tort suit") (emphasis added).

It is true the Court stated in the *Ruth-LHWCA Opinion* that there was "no question that LHWCA applies to plaintiff Ruth, who has applied for and receives LHWCA benefits through Ingalls Shipyard." 416 F.Supp.2d at 586. But this observation certainly does not stand for the proposition that the provisions of LHWCA do not cover a longshoreman *unless* he applies for and receives benefits, as defendants assert. Moreover, as plaintiffs point out, defendants' position makes no sense:

> One might sensibly argue that a plaintiff who **does** receive LHWCA benefits should have fault allocated to his employer in the tort suit against manufacturers, so as to prevent the Plaintiff from receiving a double-recovery. But Defendants are arguing for precisely the opposite – because Mr. Jowers **did not** receive LHWCA benefits, they want to allocate fault to his employer, so that he receives even less than a full recovery [for] his injuries. There is no reason to think that this is what the Mississippi Supreme Court intended.

Reply brief at 14.

Accordingly, Jowers' motion for summary judgment on this defense is granted.

### C.    Comparative Negligence.

Mississippi law provides that, in all actions brought for personal injuries, "damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured." Miss. Code Ann. §11-7-15 (entitled "Comparative negligence"). *See Fife v. Polaris Industries, Inc.*, 2008 WL 160640 at *1 (S.D. Miss. Jan. 15, 2008) ("Under Mississippi law, products liability actions established by Miss. Code Ann. §11-1-63 are subject to comparative fault, with all questions of contributory negligence to be determined by the jury.  Miss. Code Ann. §§ 11-7-15 , 11-7-17."); *Pickering v. Industria Masina I Traktora (IMT)*, 740 So.2d 836 (Miss. 1999) (affirming comparative negligence jury instruction even though plaintiff's "claim was based solely on the theory of strict liability").  Accordingly, defendants' 13th defense is that, "[i]n the event that any of the injuries to plaintiff were caused, in whole or in part, by his own contributory negligence, then the amount of damages recoverable by the plaintiff should be diminished pursuant to Miss. Code Ann. §11-7-15, in accordance with his degree of fault."

Jowers argues he is entitled to summary judgment on this defense, because there is "no suggestion or factual support for the proposition that Mr. Jowers breached the standard of care or that his brain damage was foreseeable to him.   Instead, Mr. Jowers followed the inadequate warnings that the Defendant[s] provided."  Motion at 8 (citation omitted).   The Court concludes, however, that defendants adduced evidence on this matter sufficient to make the question of whether Jowers was, himself, negligent one for the jury.  Because there remain material issues of fact in dispute, Jowers' motion for summary judgment on the defense of comparative negligence must be denied.   *See Hageney v. Jackson Furniture of Danville, Inc.*, 746 So.2d 912 (Miss.  Ct. App. 1999) (affirming the trial court's decision not to preclude

"testimony regarding or arguing any negligence on the part of [plaintiff]" in a product liability case).

      **IT IS SO ORDERED.**

                        /s/ Kathleen M. O'Malley
                        **KATHLEEN McDONALD O'MALLEY**
                        **UNITED STATES DISTRICT JUDGE**

**DATED**: April 14, 2009